**Lawrence D. MOHN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 3337.**

Supreme Court of Alaska.

Sept. 15, 1978.

Sue Ellen Tatter, Asst. Public Defender, Brian Shortell, Public Defender, Anchorage, for appellant.

David Shimek, Glen Anderson and David J. Walsh, Asst. Dist. Attys., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

BURKE, Justice.

On December 13, 1976, appellant Lawrence Mohn pled *nolo contendere* to two counts of issuing checks with insufficient funds in violation of AS 11.20.230.[1] In this appeal, Mohn challenges the prosecution's use of his bank records before the grand jury and the constitutionality of the statutory scheme under which he was indicted. He also appeals his sentence.

On July 30, 1976, Larry Mohn purchased from an Anchorage retail store a leisure suit, a suede jacket and one or two shirts with a check for $477.00, made on his personal account at Alaska Statebank. The following day, Mohn bought from another Anchorage store a gold nugget watchband with a check for $550.00, on the same account. In each case there were insufficient funds in his account to cover the checks and Mohn was aware of this fact.

The state presented its case to the grand jury on September 29, 1976. Witnesses for the prosecution included salespeople from each of the two stores as well as an Anchorage police investigator who testified that Mohn had admitted that he had written the checks knowing that his account did not have the funds to cover them. Also appearing as a witness was an employee of Alaska Statebank, Ruth Overturf, who brought with her Mohn's signature card and his bank statement, the latter of which indicated that there were insufficient funds in his account to cover the two checks. The documents were brought by Overturf in response to a purported subpoena duces tecum. Although someone had typed in "duces tecum" at the top, the subpoena did not command the production of any items but merely ordered Overturf to appear before the grand jury. The two items which she did bring were brought in response to an informal request by either the district attorney's secretary or a police officer.

The grand jury returned a true bill on September 30, 1976. Thereafter, Mohn moved to suppress the bank records on the ground that they had been illegally obtained and to dismiss the indictment on a variety of grounds. Both motions were denied. Mohn then pleaded *nolo contendere* to the two counts charged in the indictment, preserving his right to appeal the denial of his two motions. *See Cooksey v. State,* 524 P.2d 1251 (Alaska 1974). He was sentenced to three years on each count, the sentences to run concurrently.

I

Mohn's first argument on appeal goes to the legality of the state's use of his bank records before the grand jury. Stated briefly, Mohn contends that he had a reasonable expectation of privacy in his bank

---

1. AS 11.20.230 provides:

*Drawing of checks with insufficient funds.* A person who, with intent to defraud, makes, draws, utters or delivers to another person a check or draft on a bank or other depository for the payment of money, knowing at the time of the drawing or delivery, that he does not have sufficient funds or credit with the bank or depository to meet the check or draft in full upon its presentation is guilty of larceny.

**42**

records under art. I, § 22 of the Alaska Constitution[2] and that therefore such records could be obtained only pursuant to a warrant based on probable cause. In the alternative, appellant asserts that the subpoena duces tecum used by the state to obtain his bank records was unconstitutionally overbroad and that the records were obtained without compliance with AS 06.-05.175.[3] Appellant maintains that his indictment thus must be dismissed because the use of such illegally obtained evidence before the grand jury constituted prosecutorial misconduct. Alternatively, he contends that we must judge whether there was sufficient evidence before the grand jury to support the indictment absent the bank records.

▎ We find it unnecessary to determine whether or not the state illegally obtained appellant's bank records for use before the grand jury. Assuming, *arguendo,* that the bank records were seized illegally, and that under Alaska law illegally obtained evidence cannot be used in grand jury proceedings,[4] we do not believe that the state's use of this evidence requires dismissal of the indictment. First, even if we exclude the

bank records, there still was sufficient evidence to support the indictment in this case.[5] The checks themselves were presented to the grand jury, each bearing a stamp stating "Non-Sufficient Funds." Salespeople from the two stores, each of whom identified Mohn as the writer of the checks on the basis of photographs shown them by the police, testified as to the purchases Mohn had made with the checks. Their testimony further showed that Mohn had not informed them at the time that his account lacked funds to cover the checks. Finally, a police investigator testified that Mohn had admitted to him that he had written the checks knowing that he had insufficient funds in his account to cover them. We believe that this evidence in itself was sufficient to support the indictment charging that appellant knowingly made and uttered, with intent to defraud, two checks with insufficient funds in violation of AS 11.20.230.[6] Second, contrary to appellant's suggestion, the prosecution's use of appellant's bank records did not constitute the sort of prosecutorial misconduct which we condemned in *Anthony v. State,* 521 P.2d 486, 496–97 n.37 (Alaska 1974).

2. Art. I, § 22 of the Alaska Constitution provides:

The right of the people to privacy is recognized and shall not be infringed. The legislature shall implement this section.

3. AS 06.05.175 states:

*Depositor and customer records confidential.* (a) The bank records pertaining to depositors and customers are confidential and shall not be made public except (1) when the bank, customer or depositor is compelled to disclose the contents of the records by a court, (2) when their disclosure is required by federal or state law or regulation, (3) when disclosure is authorized in writing by the depositor or customer, or (4) when disclosure is made to the holder of a negotiable instrument drawn on the bank as to whether the drawer has sufficient funds in the bank to cover the instrument.

(b) When disclosure of bank records is required or allowed under (a)(1) or (2) of this section, the bank shall notify the depositor or customer of the disclosure. If notification before disclosure is not possible, the bank shall immediately notify the customer or depositor of the disclosure or inquiry. However, no notification shall be made if disclosure is made under a search warrant or un-

der a subpoena issued by or at the behest of a grand jury.

4. The United States Supreme Court has held that the Fourth Amendment exclusionary rule is not applicable to grand jury proceedings and that illegally obtained evidence, therefore, may be presented to federal grand juries. *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). We have not yet determined whether the Alaska Constitution or the Alaska Rules of Criminal Procedure dictate a similar or contrary result in this state.

5. Where inadmissible evidence is presented to a grand jury, we may examine the record to determine whether sufficient evidence exists to support the indictment absent the excluded evidence. *See Webb v. State,* 527 P.2d 35, 36 (Alaska 1974); *McKinnon v. State,* 526 P.2d 18, 27 (Alaska 1974).

6. Appellant maintains that his bank statement was the only evidence before the grand jury indicating that he had *never* deposited money in his account and that absent the statement there was insufficient evidence of intent to defraud to support the indictment under AS 11.-20.230. We do not agree.

Unlike the situation in *Anthony* where the prosecutor made numerous references to clearly inadmissible, irrelevant and unsubstantiated evidence before the grand jury,[7] we do not think that the prosecution's use of appellant's bank records in the instant case so tainted the grand jury proceeding that exclusion of the evidence would not remove the taint. This being the case, we hold that the indictment may stand.

## II

Appellant also contends that his convictions must be reversed because the statutory scheme with regard to worthless checks makes the same conduct, *i. e.*, issuing a check with insufficient funds, punishable as either a misdemeanor or a felony. Thus, Mohn argues, the statutes are unconstitutionally vague in that a potential wrongdoer is given insufficient notice of the penalty applicable to certain conduct and undue discretion is given prosecutors in determining with which offense a defendant is to be charged.

■ AS 11.20.210 makes it a misdemeanor for a person to issue a check knowing that there are or will be insufficient funds to cover payment of the check.[8] AS 11.20.-230, the statute under which appellant was charged, provides that a person who, with intent to defraud, passes a check knowing that he does not have sufficient funds to cover payment of the check, is guilty of larceny.[9] Where the value of the consideration given for the check exceeds $250, violation of AS 11.20.230 is punishable as a felony. AS 11.20.240(2); AS 11.75.030. Under AS 11.20.210 no intent to defraud is required, while under AS 11.20.230, such intent is required. Because AS 11.20.230 requires proof of this additional element, *i. e.*, the intent to defraud, it follows that these statutes attach different penalties to different offenses and that the statutory scheme is not void for vagueness as claimed by appellant.[10]

7. In *Anthony,* the district attorney had made numerous references before the grand jury to matters such as Anthony's prior criminal record and the results of polygraph tests. In addition, the district attorney had expressed his suspicion that Anthony was involved in the local drug traffic, had related details of another case the state was preparing against Anthony and had made other comments totally lacking evidentiary support.

8. AS 11.20.210 provides:
   *Issuing checks without funds or credit.* A person is guilty of a misdemeanor and upon conviction is punishable by a fine of not more than $1,000, or by imprisonment for not more than one year, or by both, if he
   (1) makes, draws, utters, or delivers a check, draft or order drawn upon a bank or other depository, for payment of money, knowing at the time of the making, drawing, uttering or delivering that the maker or drawer does not have sufficient funds or credit with the bank or other depository for its payment in full, upon presentation, and without informing the payee or the person to whom it is delivered, at the time of the making, uttering, drawing or delivery of it, that the person making, drawing, uttering or delivering the check, draft, or order does not have sufficient funds or credit with the bank or other depository for its payment in full, upon presentation; or
   (2) has funds or credits at the time he makes, draws, utters, or delivers a check,

draft or order sufficient for its payment, but who has knowingly drawn, made, uttered or delivered other checks, drafts or orders which, if presented in due course, would exhaust the funds or credits; or
   (3) knows at the time he makes, draws, utters or delivers a check, draft or order, that for other reasons the funds or credits will be exhausted by the time the check, draft or order is presented; or
   (4) knowingly, after drawing, making, uttering or delivering a check, draft or order, exhausts by any means the funds or credits upon which the check, draft or order is drawn before it is presented for payment.

9. *See* note 1, *supra*, for text of AS 11.20.230.

10. Appellant argues that notwithstanding the apparent differences between AS 11.20.210 and AS 11.20.230, the same conduct may constitute a felony or a misdemeanor because "the mere issuing of a check without funds sufficient to cover it makes a prima facie case under both [sections]," by virtue of the statutory inferences permitted by AS 11.20.220 and AS 11.20.250. AS 11.20.220 provides:
   *Evidence of knowledge of insufficient funds.* The making, drawing, uttering, or delivering of a check, draft, or order, payment of which is refused by the drawee, is prima facie evidence of knowledge of insufficient funds or credit with the bank or other depository, against the maker or drawer, if the maker or drawer has not paid the drawee the amount

## III

▉ Appellant has also appealed his sentence on a variety of grounds. We find that the trial court's failure to afford Mohn the opportunity to make a statement on his own behalf at the sentencing hearing requires a remand for resentencing and thus do not reach appellant's other assertions of error.

Rule 32(a), Alaska R.Crim.P., states in part:

Before imposing sentence the court shall afford the defendant the opportunity to make a statement in his own behalf and to present any information in mitigation of punishment.

It is conceded by the state that the trial court in this case did not address Mohn in accordance with this rule. The state contends, however, that the error was harmless and that Mohn's failure to request an opportunity to speak in his own behalf or to object when the court began its sentencing remarks constitutes both a waiver and a recognition by Mohn that he had no desire to address the court.

In *Nattrass v. State,* 554 P.2d 399, 402 (Alaska 1976), we had occasion to discuss the defendant's right of allocution embodied in Criminal Rule 32(a). Quoting from *Green v. United States,* 365 U.S. 301, 304, 81 S.Ct. 653, 655, 5 L.Ed.2d 670, 673 (1961), we noted the importance of giving a defendant the opportunity to personally make a statement to the sentencing court: "The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." 554 P.2d at 402. Although in that case we held that the trial court had minimally complied with Rule 32(a), we stated:

In order to ensure that this right [of allocution] is implemented, the sentencing court must comply with the requirements of Criminal Rule 32(a) and unequivocally bring home to the defendant that he has the right to make a statement in his own behalf and to present any information in mitigation of punishment.

*Id.* In two cases subsequent to *Nattrass,* we reiterated the view that sentencing courts must comply with the requirements of Rule 32(a) although we did not find a remand for resentencing to be necessary in either case. *Capwell v. State,* 568 P.2d 10, 12 (Alaska 1977); *State v. Abraham,* 566 P.2d 267, 268 (Alaska 1977).

▉ We believe that it is no longer enough for us to simply remind the trial courts that compliance with Rule 32(a) is required. The failure of the court below to address the defendant personally was not harmless error for, as we observed in *Nattrass,* there is no substitute for the impact on sentencing which a defendant's own words might have if he chooses to make a statement. While it is true that the presentence report before the court contained a number of statements made by Mohn to the probation officer and others, we do not

---

due with cost and protest fees, within two days after receiving notice that the check, draft or order has not been paid by the drawee.

AS 11.20.250 provides:

*Evidence of intent to defraud.* The uttering or delivery of a check or draft to another without funds or credit sufficient to meet it is prima facie evidence of intent to defraud. The fact that the jury *may infer* that an accused had the requisite intent does not mean that it is *required* to find such intent merely because he issues a check with insufficient funds. Despite the aid of these statutory inferences the state must still prove beyond a reasonable doubt that the accused did in fact have the intent to defraud before it is entitled to a conviction under AS 11.20.230. Thus, we believe that appellant's attack upon the constitu-

tionality of AS 11.20.210 and AS 11.20.230 is without merit.

Appellant also ignores the fact that AS 11.20.220 and AS 11.20.250 played no part in his own convictions. In the court below the state conceded that the inferences permitted thereby would be violative of due process, as arbitrary and without a rational relationship between the facts to be inferred and the facts proved. We do not pass on the constitutionality of AS 11.20.220 and AS 11.20.250 themselves, as that issue has not been directly raised in this appeal.

Since the basic statutes themselves, AS 11.20.210 and AS 11.20.230, are sharply distinguished by the additional element of intent to defraud needed for a conviction under the latter, we hold that the statutory scheme is not void for vagueness.

think that a written statement can adequately take the place of a verbal one made in the presence of the court. We do not believe, moreover, that appellant's failure to assert actively his right of allocution constitutes a waiver of that right or a recognition by him that he did not wish to address the court. Under Rule 32(a) the obligation is on the trial court to afford the defendant the opportunity to speak and not on the defendant to request such an opportunity. Of course, the defendant can always refuse to address the court but such refusal will constitute a waiver of the right of allocution only after the defendant has been personally apprised of his right to make a statement if he so wishes. It is only in this way that we can ensure that the defendant is fully aware that in fact he does have such a right.

Because appellant was not addressed in accordance with Criminal Rule 32(a), we remand this case to the superior court for resentencing at which time the court is to afford appellant the opportunity to make a statement in his own behalf and to present any information that he may have in mitigation of punishment.

AFFIRMED in part and REMANDED for a new sentencing hearing consistent with this opinion.