James MANGOLD, Appellant,

v.

STATE of Alaska, Appellee.

No. 4678

Supreme Court of Alaska.

June 27, 1980.

Joseph A. Kalamarides, Anchorage, for appellant.

Charles M. Merriner, Asst. Dist. Atty., Larry R. Weeks, Dist. Atty., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

BURKE, Justice.

James Mangold was charged by grand jury indictment with two counts of selling cocaine in violation of AS 17.10.010. The sales allegedly occurred on July 25 and September 1, 1978; the buyer in each case paid $100 for a gram of cocaine.

The sales were made to undercover police officers, who stated in attachments to the presentence report that they bought one more gram on September 6 and set up a buy of one-half pound of cocaine for September 13, 1978. On that day, Mangold supplied only one-fourth pound of the drug which he admitted selling to the officers for approximately $8,000. He was immediately arrested.

The charge arising out of the one gram sale on July 25 was dismissed at sentencing, after Mangold entered a plea of guilty to the September 1 sale of one gram. An additional charge, for the quarter pound sale on September 13, was also dismissed at that time.

The superior court sentenced Mangold to a five year term of imprisonment, suspending the execution of a two year portion thereof. Mangold appeals claiming that the sentence is excessive, that it was based on unverified and prejudicial information in the presentence report, and that the sentencing judge improperly categorized him as being within the worst class of drug offenders.

### A. *Characterization as Worst Type of Drug Offender*

In *Waters v. State*, 483 P.2d 199, 201 (Alaska 1971), we established the following categories for use in the sentencing of drug offenders:

1. Smuggling, sale, or possession for sale of large quantities of narcotics;
2. Smuggling, sale, or possession for sale of small quantities of narcotics;
3. Possession of narcotics without intent to sell;
4. Marijuana offenses.

Mangold claims he fell into category 2. The superior court, relying on Mangold's admission at the time of sentencing, found that he had made the quarter pound sale. The court then concluded that he fell into category 1, the most serious of the four categories in *Waters*. Relying on *Galaktionoff v. State*, 486 P.2d 919 (Alaska 1971), Mangold claims that the court's consideration of the one-fourth pound transaction, for which the charge was dismissed, was error.

In *Galaktionoff* we reviewed a decision rendered in an appeal to the superior court, wherein the superior court affirmed a district court sentence of one year for the crime of petty larceny. The record revealed that a major factor in the superior court's decision to affirm the sentence was its "belief that Galaktionoff was probably guilty of more serious offenses than the one charged." 486 P.2d at 923–24. We reversed, stating:

We recognize, of course, that in the circumstances of this case the petty larceny which was committed would support a charge of larceny in a building or burglary not in a dwelling. Nevertheless we feel that such possible greater offenses should not be considered by the reviewing court.

*Id.* at 924.

*Galaktionoff*, however, was "not intended to restrict the trial court from using verified information concerning additional crimes where the defendant is informed of the information and given an opportunity to explain or admit it." *Hixon v. State*, 508 P.2d 526, 527 n. 1 (Alaska 1973) (citation

omitted). Thus, in *Hixon v. State*, we held that the superior court did not err in sentencing the defendant on charges of robbery and burglary not in a dwelling when it considered additional felony charges that were admitted by the defendant at the time of sentencing even though those additional charges were later dismissed. Unlike the situation in *Galaktionoff*, where an unrepresented defendant's "explanation of the crime was not solicited or heard." 486 P.2d at 923, the defendant in *Hixon*, at the time of sentencing, "acknowledged the commission of two [additional] burglaries and the felony of receiving stolen property, all of which were dismissed after a plea of guilty to the charges [upon which he was being sentenced]." 508 P.2d at 527.

■ Mangold's reliance upon *Galaktionoff* is, therefore, misplaced. Since Mangold admitted making the quarter pound sale, the superior court was entitled, under our holding in *Hixon*, to consider his commission of that additional felony offense in sentencing him on the charge upon which he was convicted.

■ Given Mangold's admission that in addition to the sale for which he was convicted, he later sold the officers a quarter pound of cocaine, for approximately $8,000, we believe that the superior court was enti-tled to classify him as coming within the most serious category of drug offenders described in *Waters*. There is nothing in our opinion in *Waters* that requires the sentencing court to classify a drug offender solely on the basis of the facts underlying the particular offense leading to his conviction. *Waters* stresses differentiation among *offenders*, not among the particular facts of a given charge. 483 P.2d at 201.

B. *Use of Unverified Information in the Presentence Report*

■ Mangold next contends that he is entitled to a reduction in his sentence, or resentencing by the superior court, because of the inclusion of improper material in the presentence report prepared by the probation officer prior to sentencing. Specifically, Mangold complains of the following:

1. A statement prepared by one of the undercover officers, Dennis Hubble, "contains accounts of police contacts prior to the offense for which appellant was being sentenced." [1]

2. A statement prepared by another officer, Charles Adams, contained "statements concerning the arrest and indictment of Wayne Fulton, who is termed 'closely associated' with appellant, for threatening a state's witness." [2]

---

1. The "statement" referred to was Officer Hubble's written response to various questions contained in a Department of Corrections form sent to him by the probation officer that prepared the presentence report. Those portions of the statement that Mangold deems objectionable apparently consist of the following questions and answers:

    9. Do you think that subject would be a menace or would endanger society if he were released on probation? *Yes.* If your answer is yes, why? *I believe that Mangold will continue to sell cocaine as he was a supplier for other areas within the state.*

    10. We would appreciate your writing a short summary of the present offense. Please use the bottom of this shee[t].
    Reply by: <u>DENNIS D. HUBBLE</u>
    Title: <u>SPECIAL OFFICER (METRO UNIT)</u>
    A total of four separate cocaine buys were made from Mangold by this officer. The last buy (9–13–78) was to be for ½ pound. A decision was made to effect an arrest before the second ¼ pound could be delivered. On 9–12–78 Mangold advised me that he was the supplier for the Kodiak area, that he delivered 4 ounces of cocaine to Kodiak at a time. Subject did not state how often deliveries were made.

    On 9–6–78, I purchased one gram of cocaine from Mangold and at that time Mangold stated he had seventeen (17) grams and one ¼ ounce to sell. On 9–8–78 Mangold advised me that he had sold all 17 grams and the ¼ oz. ($2,300.00–2,400.00 in two days time.)

2. Those portions of Officer Adams' statement deemed objectionable are apparently the following:

    7. Have any items come to light since you completed your investigation which you believe should bear further investigation by our office? *One of the primary witnesses for the state was threatened with injury if he testified. The individual arrested for making the threats is a friend and possible accomplice of Mangold.*

3. In addition, such statements contained "unsubstantiated allegations which would not have been sufficient for obtaining a mere search warrant." [3]

4. The probation officer's report "contained unfounded assumptions of the length and depth of appellant's involvement in the drug scene, alleging that it has been continuous since defendant's . . . conviction [for possession of a small quantity of marijuana in 1972]." [4]

5. The presentence report contained "material factual mistakes and omissions," relating to Mangold's employment history and educational background.[5]

6. The fact that his 1972 conviction for possession of marijuana resulted in a suspended imposition of sentence was omitted from the report.

A copy of the presentence report was furnished to Mangold prior to sentencing. At the sentencing hearing Mangold testified that his earlier conviction for possession of marijuana had resulted in a $125 fine and that, according to his understanding, he was entitled, after one year, to have the conviction set aside.[6] In addition, Mangold testified as to the details of his educational background and employment history, thus correcting the "factual mistakes" and supplying the information necessary to cure the "omissions" which he alleges were contained in the presentence report. He further testified that he "had absolutely

---

9. Do you think that subject would be a menace or would endanger society if he were released on probation? *Yes.* If your answer is yes, why? *Mangold appears to be part of a cocaine distribution ring which is not afraid to threaten witnesses that might be willing to testify against them.*

10. We would appreciate your writing a short summary of the present offense. Please use the bottom of this sheet.
Reply by: CHARLES ADAMS
Title: METRO INVESTIGATOR

Three cocaine transactions involving approximately one gram each took place between an undercover officer working with an informant and *Mangold*. *Mangold* encouraged the officer to buy much larger quantities and after extensive negotiations a one half pound cocaine transaction was scheduled between the officer and Mangold. A total price of approximately $16,000.00 was arrived at between Mangold and the officer. On 9/6/78 the officer met with *Mangold* while under surveillance by other Metro Officers and *Mangold* agreed to sell only ¼ pound at a time. After ¼ pound of cocaine exchanged hands *Mangold* was arrested.

When a witness, Kevin Miller, returned to Anchorage to testify against Mangold in court, he received telephone threats threatening to 1st cripple him, then kill him and his family. An individual closely associated with Mangold, Wayne Fulton, who was suspected of being a participant in the ½ lb. cocaine transaction, was arrested and subsequently indicted for threatening a state's witness.

3. Here, Mangold is apparently referring to the various allegations already quoted in notes 1 and 2 *supra*.

4. In his presentence report, the probation officer stated:

---

The defendant appears to be a young adult, who has been involved in the drug scene for some time; with his first criminal charge for Possession of Marijuana occurring six years ago. Apparently he has continued to be involved with drugs as he was involved in four incidents leading to his arrest on the present offense.

5. The "factual mistakes and omissions" referred to were the presentence report's failure to mention that Mangold had completed one year of college; the report's failure to indicate that Mangold had "been continuously employed since he left high school until the time of his arrest; that these jobs were often positions of authority and trust; that his vocational skill and trustworthiness have been attested to by his friends and co-workers; and that, in fact, he ha[d] a job open to him at the . . . time [of sentencing]."

6. At his sentencing hearing Mangold testified as follows:

A. As—as I understood, I was told by the judge that after a period of a year that I could enter an [sic] SIS which is a written from to more or less—I get—from what I understand, just to take it off my record.
Q. I see. And did you in fact get a—fill out a document—for an SIS?
A. I did, but as—when I was talking to Loy I found out that it had not gone through or something.

Actually, from the foregoing testimony, it is not at all clear that the 1972 conviction in fact resulted in a suspended imposition of sentence. In any event, the superior court stated at the time of sentencing: "I'm not placing any emphasis whatever [sic] on Mr. Mangold's 1972 marijuana conviction."

no knowledge" of the alleged threatening of a witness. As to these matters, the state presented no contrary evidence, nor did it argue to the contrary in making its sentence recommendation to the court.

In addition, Mangold called three witnesses to the stand who testified, generally, that they had known him for a considerable length of time, that they believed him to be trustworthy, and that, prior to his arrest, they had no knowledge that he was involved in the drug trade or that he ever used drugs. Mangold also testified that he only sold cocaine to help an injured friend, that he did not do so to make a profit for himself, that he was sorry that he had become involved with cocaine, and that he would never again engage in such activities.

Otherwise, Mangold made no effort to challenge the accuracy of any of the statements contained in the presentence report. He failed to object to the contents of the report at the time of sentencing; failed to ask for the opportunity to examine, under oath, the author of the report, or any other person whose statement was included in the report; made no motion to strike any portion of the report; and, except as already noted, failed to offer any evidence to contradict, explain or otherwise rebut the materials contained in the report. Such being the case, "he is now foreclosed from raising such issues." *Nukapigak v. State*, 576 P.2d 982, 984 (Alaska 1978), *quoting People v. Chi Ko Wong*, 18 Cal.3d 698, 135 Cal.Rptr. 392, 557 P.2d 976, 993 (1976).

7. AS 12.55.085(a) provides:
*Suspending imposition of sentence.* (a) If it appears that there are circumstances in mitigation of the punishment, or that the ends of justice will be served, the court may, in its discretion, suspend the imposition of sentence and may direct that the suspension continue for a period of time, not exceeding the maximum term of sentence which may be imposed, and upon the terms and conditions which the court determines, and shall place the person on probation, under the charge and supervision of the probation officer of the court during the suspension.

8. In *Boyne* we held that since the statute did not expressly authorize such action, the superior court, in its order suspending the imposition of sentence pursuant to AS 12.55.085, was

## C. *Length of Sentence*

■ Mangold's final contention is that the sentence imposed is overly severe, in light of the nature of the crime, his past record and character, and society's need to protect itself. He argues that a substantially lesser sentence would adequately fulfill the goals of sentencing.

In selecting its sentence, the superior court carefully weighed the appropriate sentencing criteria, and gave explicit reasons for its decision. *See State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970). On the whole, we are unable to say that the court was clearly mistaken in imposing the sentence that it did. Accordingly, its sentence must be affirmed. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

■ We note, however, that in imposing sentence the trial court emphasized that if the alternative of imprisonment as a condition of suspending the imposition of sentence, pursuant to AS 12.55.085(a),[7] were available, it would "examine very closely the advisability" of that disposition. But the court correctly determined that that alternative was not available to it under our holding in *Boyne v. State*, 586 P.2d 1250 (Alaska 1978).[8]

Subsequent to the sentencing hearing, the state legislature added to the statutory scheme a new provision, AS 12.55.086,[9] authorizing imprisonment as a condition of

without authority to order imprisonment as a condition of probation.

9. AS 12.55.086 provides:
*Imprisonment as a condition of suspended imposition of sentence.* (a) When the imposition of sentence is suspended under AS 12.55.085, the court may require, as a special condition of probation, that the defendant serve a definite term of continuous or periodic imprisonment, not to exceed the maximum term of imprisonment that could have been imposed.
(b) A defendant imprisoned under this section is entitled to a deduction from his term of imprisonment for good conduct under AS 33.20.010. Unless otherwise specified in the order of suspension of imposition of sentence, a defendant imprisoned under this section is eligible for parole if his term of impris-

probation granted under a suspended imposition of sentence. The legislation became effective May 2, 1979. Mangold was sentenced on March 8, 1979. Because Mangold's attorney specifically requested that his client be given a suspended imposition of sentence and because the trial court indicated it would have a favorable attitude toward that approach, if prison time could be imposed as a condition of probation, we believe that the case should be remanded for the trial court to consider that alternative in light of the subsequent legislative action. Mangold's case is therefore remanded for that purpose.

REMANDED for the purpose stated. Otherwise, the judgment is AFFIRMED.

onment exceeds one year and is eligible for any work furlough, rehabilitation furlough, or similar program available to other state prisoners.

(c) If probation is revoked and the defendant is sentenced to imprisonment, he shall receive credit for time served under this section. Deductions for good conduct under AS 33.20.010 do not constitute "time served".