**Jay Lowell LAW, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. 4552.

Supreme Court of Alaska.

Feb. 27, 1981.

Bruce Heller, Asst. Public Defender, and Brian Shortell, Public Defender, Anchorage, for appellant.

William D. Cook, Asst. Dist. Atty., Larry R. Weeks, Dist. Atty., Anchorage and Avrum Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice. [BOOCHEVER, J., not participating.]

## OPINION

PER CURIAM.

Jay Law had financial problems. One day in January 1978, he tried to sole his money problem by kiting checks,[1] and found himself with a legal problem in the form of a five-count felony indictment.

He pled *nolo contendere* to five counts of larceny.[2] He was sentenced to five concurrent three-year terms.[3] He appeals the sentences.

■ At a lengthy sentencing hearing, the state presented testimony which raised a strong inference that Law had, while awaiting sentencing, committed forgery.[4] Charges on this incident were pending at the time of sentencing, and Law, on the advice of his attorney, made no statement to explain or deny the evidence of forgery. Other testimony raised a somewhat less compelling inference of a further attempt by Law to fraudulently pass a bad check during the interim between his arrest and conviction. Law offered no explanation for the appearance of illegality. Law admitted he had submitted false information to a

1. Law's check-kiting scheme was not very successful. He opened a checking account at Bank A(1) with a $100 check on a closed checking account at Bank B. He then went to Bank C(1) and deposited in an existing account two checks one on the new Bank A(1) account and one on the closed Bank B account. Bank C(1) gave him a cashier's check which Law took to Bank D, opening another new account and receiving $50.00 in cash. At Bank C(2) he deposited in an existing account three checks, drawn on the closed Bank B account and the newly opened accounts at Banks A(1) and D. Bank D(2) gave him a cashier's check in an amount which it mistakenly printed as zero dollars. Law next went to Bank A(2) and deposited two checks, one drawn on the closed Bank B account and one on the new Bank C(1) account. Law was arrested that same day while unsuccessfully trying to cash a check on one of these accounts.

2. Former AS 11.20.230 defined writing or attempting to cash a check with intent to defraud as larceny. Law was convicted for writing and passing five separate checks, each with a face amount over $250.

3. Under former AS 11.20.240(2) the sentence for a violation of AS 11.20.230 is one to ten years "if the face amount of the check ... exceeds $250."

4. The implication of the testimony was that four payroll checks had been accidentally placed in or mailed to Law's Anchorage post office box and that he endorsed them to himself and deposited them in his own bank account.

bank in order to obtain a loan on which he subsequently defaulted.[5]

Law argues first that, because the sentencing judge did not inform him of his right of allocution, the sentence must be vacated and the case remanded. The state notes that Law testified extensively at the sentencing hearing and says that the admitted failure to inform him of a right to allocution immediately prior to the imposition of sentence is therefore harmless.

Under direct examination by his counsel at the sentencing hearing, Law spoke at some length on his personal problems, his remorse for having violated the law, the frustrations he had experienced, his hopes and expectations, his strengths and weaknesses, his intelligence, and his plans for the future. The examination by counsel representing Law and the latter's response to the questions put to him appear to have been designed to encompass the things he might have said had he been afforded the right of allocution, as required by Criminal Rule 32(a).[6]

But the "opportunity to make a statement in his own behalf and to present information in mitigation of punishment"[7] generally is significantly different from the opportunity to respond to the questions of counsel. In this case, Law was not afforded that opportunity at all. Without asking Law whether he wished to speak prior to the imposition of sentence, the judge merely sentenced him and then explained at some length the criteria he had considered in the choice of sentence he had made.

■■■■ We hold that under Criminal Rule 32(a) the right of allocution must be afforded a defendant even when he testifies under examination by counsel. As we stated in *Nattress v. State*, 554 P.2d 399, 402 (Alaska 1976), and reiterated in *Mohn v. State*, 584 P.2d 40, 44 (Alaska 1978):

> In order to ensure that this right [of allocution] is implemented, the sentencing court must comply with the requirements of Criminal Rule 32(a) and unequivocally bring home to the defendant that he has the right to make a statement in his own behalf and to present any information in mitigation of punishment.

■■■■ Despite the fact that Law, while being examined by his counsel, testified at some length, we believe that under the explicit requirements of the *Mohn* case the failure of the court to comply with the requirements of Criminal Rule 32(a) was not harmless error. The case must be remanded to the superior court for resentencing "at which time the court is to afford appellant the opportunity to make a statement in his own behalf and to present any information that he may have in mitigation of punishment." *Mohn v. State*, 584 P.2d 40, 45 (Alaska 1978).

Law next reviews the sentences in light of the nature of the crime, the defendant's character,[8] and the need to protect the pub-

---

**5.** We note that the information concerning these other events was properly established by the district attorney through testimony at the sentencing hearing, subject to cross-examination by Law. Law was given an opportunity to respond to the allegations and his failure to do so did not violate his right against self-incrimination. *See Morgan v. State*, 598 P.2d 952, 953 (Alaska 1979); *Nukapigak v. State*, 576 P.2d 982 (Alaska 1976); *Layland v. State*, 549 P.2d 1182, 1183–84 (Alaska 1976). The information was considered by the lower court as it related to the crime before the court. The term imposed was not a sentence for these other alleged crimes. Had it been, the sentence imposed would have been improper and reversal would be required for that reason. *See Pyrdol v. State*, 617 P.2d 513, 515 (Alaska 1980); *Strachan v. State*, 615 P.2d 611, 613–14 (Alaska 1980).

**6.** Criminal Rule 32(a) provides in part:

> Before imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment. If the defendant is being sentenced following a plea of guilty or nolo contendere the court shall question the defendant to ascertain that he understood the meaning of his plea and that it was freely and voluntarily entered.

**7.** *Id.*

**8.** Law was 20 years old at the time of the crime, more than two years ago. He has a record of juvenile property crimes for which he served time at a juvenile detention facility in 1973. In recent years he has been employed at a variety of entry level jobs and tried to operate a mail order business with limited success. He

lic. *See Benefield v. State,* 559 P.2d 91 (Alaska 1977); *State v. Chaney,* 477 P.2d 441, 443 (Alaska 1970). He concludes the factors do not justify the term imposed.

■ This was a nonviolent property crime which resulted in a minimal loss to a corporate victim. While Law has demonstrated a socially irresponsible course of conduct, he does not appear to pose a threat to the public safety. In view of the nature of the offense, the character of the offender, and the need for protecting the public we believe that the three-year sentences are clearly mistaken. Three years is more than twice the median term and equal to the longest term of the ten sentences meted out for this offense between 1974 and 1976.[9] Under the current criminal code, Law's crimes would have resulted in a maximum of two years and would likely have been reduced.[10]

We reverse the sentence and remand for resentencing. The total sentence of imprisonment shall not exceed two years. Whether or not any period of incarceration should be suspended and Law placed on probation during such period of suspension is within the discretion of the sentencing court.

REVERSED and REMANDED.

BOOCHEVER, J., not participating.

BURKE, Justice, with whom CONNOR, Justice, joins, dissenting in part.

The record fails to persuade me that the superior court was clearly mistaken in imposing concurrent three year terms thus, I am unable to agree that the court's sentence was excessive. *McClain v. State,* 519 P.2d 811 (Alaska 1974).

Otherwise, I concur.

---

has sporadically attended college, but his long-range goals are confused and uncertain.

9. *See* Alaska Judicial Council, Alaska Felony Sentencing Patterns, A Multivariate Statistical Analysis (1974–1976), Table I at p. 2.

10. Under the new criminal code, Law's issuance of these five checks would have been charged as one count of theft in the third degree, a Class B misdemeanor, and five counts of issuing a bad check, three of the counts being Class C felonies and two being Class A misdemeanors. *See* AS 11.46.100(1)—.140(1) —.280(c)(3), (d)(2) and (3). The maximum terms would be five years for the three felonies, and one year and ninety days on the Class A

and B misdemeanors, respectively. The presumptive sentence for a second felony offender, if Law was such, is two years. *See* AS 12.55.-125(e), AS 12.55.135. None of the aggravating factors would apply, but two mitigating factors are applicable. *See* AS 12.55.155(c); —.55(d)(3), (9). Under the current criminal code, then, Law's most serious offense would therefore have resulted in a maximum of two years and would likely have been reduced. Consecutive sentences would clearly have been inappropriate, since the kiting scheme was a single episode, although involving multiple offenses.