**Quentin C. QUALLE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 5666.**

Court of Appeals of Alaska.

Oct. 8, 1982.

Donald F. Logan, Logan & Coons, and Barry W. Jackson, Fairbanks, for appellant.

Steven J. Call and James P. Doogan, Jr., Asst. Dist. Attys., Harry L. Davis, Dist. Atty., Fairbanks, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before COATS and SINGLETON, JJ., and RABINOWITZ, Justice.*

## OPINION

PER CURIAM.

Quentin Qualle appeals from the sentences imposed following his guilty plea to one count of statutory rape, former AS 11.15.120, and one count of committing lewd and lascivious acts toward children, former AS 11.15.134. Qualle received consecutive sentences of thirty years and ten years, respectively, for an aggregate sentence of forty years imprisonment and the court restricted parole eligibility until one-half the total sentence has been served.

Qualle's arguments are best understood in the light of the following facts: Qualle agreed to take care of D.G., the seven-year-old granddaughter of a friend, on various occasions between September 1978 and March 1979. Sometimes the girl's brother, six-year-old C.G., was cared for as well. Qualle took the children to his home in North Pole, and while they were there had the children perform various sexual acts

with him and each other while he took photographs, some of which he sent to foreign publishers of pornographic magazines. Qualle's activities were uncovered when thirty-nine polaroid pictures involving the children and an accompanying "story-line" were confiscated by German customs agents in Germany in September 1979. The materials were traced to Qualle who was arrested October 22, 1979.

Qualle was indicted for two counts of statutory rape of D.G., eight counts of committing lewd and lascivious acts on D.G., by engaging in oral-genital and manual-genital contact with her, and four counts of committing lewd and lascivious acts on D.G., by causing D.G. and C.G. to engage in sexual contact with each other. On March 26, 1980, Qualle pled guilty to one count of statutory rape and one count of lewd and lascivious acts; the other charges were dismissed. Two sentencing hearings were held, the second one ostensibly pursuant to a motion under Criminal Rule 35(a).

Qualle, aged fifty-one at the time of these crimes, completed high school in Minnesota, fought as a marine in World War II, and came to Alaska in 1946. He has a history of varied but steady employment, including jobs as a laborer, longshoreman, surveyor, mechanic, and operating engineer. He was married in 1955 and separated in 1975, and a divorce was pending at the time of sentencing. The three surviving children of that marriage were aged fifteen, sixteen, and eighteen in 1980. Qualle had no criminal record except for a 1956 disorderly conduct conviction and two 1979 automobile offenses. He admitted to a history of alcoholism, but claimed he had brought his drinking under control during the last year. The probation officer summarized that Qualle "has, from all outward appearance, been a generally responsible person over a long span of years except for his sexual involvement with children." [1]

---

* Rabinowitz, Supreme Court Justice, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

1. A psychologist who interviewed Qualle subsequent to the original sentencing, stated that

Qualle has a history of irresponsibility, and does not respect social and legal constraints, but that he is certainly not a hardcore criminal with an insatiable appetite for crime.

Qualle's sexual involvement with children began with his own daughters in the early 1970's. The activity first came to light in 1976 when his daughters entered Hospitality House in Fairbanks when they were, respectively, aged twelve and fourteen. When pressed, Qualle finally admitted to the director of Hospitality House that he had had sexual relations with the girls on a number of occasions beginning at least three years earlier.[2] He was apparently very remorseful and underwent counseling intermittently for a year. All three Qualle children became wards of the state in 1976. The girls were eventually sent to Excelsior House, a private home for emotionally disturbed girls, in Denver, Colorado. At the time of Qualle's sentencing, both had run away after expressing feelings that they were being punished while their father's behavior was overlooked. Qualle's son remained in foster care in Fairbanks.

Documents, photographs, and films seized from Qualle's home in 1979 showed that he had taken sexually explicit films and photographs of his children and had tried to sell at least two rolls of such pictures to European companies. He asked for money or pornographic magazines in exchange for his pictures. One magazine ("Lolita") published a series of pictures of one of his daughters. The correspondence seized indicated that Qualle had sought payment but had apparently never been paid.[3]

Qualle denied any sexual activity with children between 1976 and 1978 when he became involved with C.G. and D.G. He admitted to sexual contact with C.G. and D.G. on at least four occasions. Qualle also admitted involvement with three other children, but the details of this activity were never developed at the hearing.

In some of his statements Qualle attempted to minimize the pecuniary motivation behind his activity with the children, claiming that his efforts to sell the pornographic pictures were only incidental and that his chief interest was his own gratification; in other statements Qualle minimized the gratification aspect, portraying the picture-taking as a photographic exercise.

At sentencing, Qualle expressed remorse for his activity, which two psychological counselors described as genuine.[4] The court-appointed psychiatrist found that Qualle tended to externalize the blame for his actions and that his insight and judgment were "minimal"; he found no evidence of psychotic disorder. The psychiatrist's diagnosis was pedophilia; in his view Qualle's prognosis was poor, based both on the statistically low success rate of treatment for pedophilia[5] and on the fact that Qualle had been in trouble before for similar activities but had not been deterred from continuing.

Qualle makes seven separate arguments in support of his claim that his total sentence was excessive. We have concluded that his total sentence should not exceed twenty-one years and that he should be eligible for parole after serving one-third of that sentence. We, therefore, remand for resentencing.

2. Qualle subsequently admitted to sexual contact with his son as well. The children testified at a 1976 custody proceeding about lewd and lascivious acts performed by their father and told the story to investigating troopers as well. However, the girls ran away from their foster placement, so formal charges were never filed.

3. It is hard to determine the extent of Qualle's commercial ventures. The transcripts refer to a large number of exhibits that are not included with the record on appeal.

4. Dr. Gilbert, former director of Hospitality House, testified that the remorse expressed by Qualle in an October 1980 letter to the court was "very genuine," but also a "frightening" parallel to Qualle's reaction in 1976, "almost an identical repetition of the contrition of his great sense of guilt and remorse and . . . apparently absolute sincerity."

5. Another witness, Dr. Gilbert, *supra* n. 4, stated that the odds were probably 90 percent against successful treatment of Qualle and added, "I don't think I'd be wanting to bet on the other 10 percent." The psychologist hired by the defense testified that in a small experimental program he'd successfully rehabilitated two of the three child sexual offenders; he conceded that in general "[t]he prognosis is lousy."

■ The supreme court has suggested a thirty year maximum on consecutive sentences for rape and related crimes growing out of the same or similar transactions, unless the defendant could be characterized as a worst offender. *Hintz v. State,* 627 P.2d 207, 210–11 (Alaska 1981); *see also Tookak v. State,* 648 P.2d 1018, (Alaska App., 1982); *cf. Helmer v. State,* 616 P.2d 884 (Alaska 1980) (twenty-five-year sentence is the maximum sentence which could be imposed for rape where youthful first offender caused his victim permanent injuries). *Hintz* would apparently preclude a total sentence in excess of thirty years for sexual assault and related crimes even where the defendant has previously been convicted of felonies, unless the prior convictions were for violent crimes or the victim suffered serious injury. *See Coleman v. State,* 621 P.2d 869 (Alaska 1980) *cert. denied,* 454 U.S. 1090, 102 S.Ct. 653, 70 L.Ed.2d 628 (1981); *Post v. State,* 580 P.2d 304, 309 (Alaska 1978); *cf. Morrell v. State,* 575 P.2d 1200 (Alaska 1978) (aggregate sentence in excess of thirty years approved for first offender who held victim captive for eight days repeatedly raping her).

■ Qualle was sentenced under the former criminal code. However, as the most recent expression of legislative intent, the sentences authorized by the new criminal code are a factor which should be considered in imposing sentence under the old code. *Whittlesey v. State,* 626 P.2d 1066, 1068 (Alaska 1980). *See Law v. State,* 624 P.2d 284, 287 (Alaska 1981); *Sundberg v. State,* 636 P.2d 619, 622 (Alaska App.1981). In *Sundberg,* where the trial judge did not consider the new code and gave a sentence twice the length of the maximum allowable under the new code, this court remanded for reconsideration.

In Qualle's case, the sentencing judge did not consider the new criminal code. The rape sentence, thirty years, is ten years longer than the maximum that Qualle could receive under current law for sexual assault in the first degree. AS 11.41.410(a)(3), (b); 12.55.125(c).[6] The lewd and lascivious acts sentence, ten years, is five years longer than the maximum sentence for sexual abuse of a minor under the new code. AS 11.41.440(a)(2), (b); 12.55.125(e). However, the new code creates a new offense, unlawful exploitation of a minor, AS 11.41.455, which is what Qualle may have been charged with had the new code been applicable to this case. Violation of AS 11.41.455 [7] is a class B felony, carrying a possible maximum sentence of ten years. AS 11.41.455(b); 12.55.125(d).

■ Nominally, at least, Qualle is a first offender. His sentences are substantially in excess of the presumptive sentences for a second offender charged with sexual assault in the first degree and unlawful exploitation of a minor. Even if consecutively imposed, the presumptive terms for a third offender would be fifteen and six years, respectively. AS 12.55.125(c)(3), (d)(2). We have held that the sentence for a first offender may equal or exceed the presump-

---

**6.** While Qualle's appeal was pending, the legislature amended the criminal code to make first degree sexual assault an unclassified offense. The maximum term of imprisonment is now thirty years with an eight year presumptive term for a first offender. The legislature also established a presumption in favor of consecutive sentences. We do not believe these changes warrant modification of our decision. *See* Ch. 143, § 30, SLA 1982.

**7.** AS 11.41.455 provides:
(a) A person commits the crime of unlawful exploitation of a minor if, in this state and with the intent of producing for any commercial purpose a live performance, film, photograph, negative, slide, book, newspaper, or magazine that depicts such conduct, he knowingly induces or employs a child under 16 years of age to engage in, or photographs, films, or televises a child under 16 years of age engaged in
(1) sexual penetration;
(2) the obscene touching of another person's genitals, anus, or female breast;
(3) the obscene touching by another person of the child's genitals, anus, or female breast;
(4) masturbation;
(5) bestiality; or
(6) the obscene exhibition of the child's genitals.
(b) Unlawful exploitation of a minor is a class B felony.

tive sentence for a second offender in an exceptional case. *Austin v. State,* 627 P.2d 657, 658 (Alaska App.1981). Qualle's past proven sexual behavior with children may establish him as an exceptional offender within *Austin,* but his total sentence, about twice the presumptive term for a third offender, deserves reconsideration by the superior court in light of *Sundberg* and *Austin.* Upon reconsideration, the term should not exceed the maximum consecutive sentences of fifteen and six years, respectively, which could be imposed on a third offender absent aggravating factors.

As an aid to the court in formulating an appropriate sentence, we direct the trial court's attention to past reported cases on statutory rape sentencing. Qualle's sentence on the rape count appears substantially more severe than that approved in any previous case. *See Alexander v. State,* 611 P.2d 469, 481–83 (Alaska 1980) (seven and one-half years for forcible rape of a teenager by repeat felon); *Mallott v. State,* 608 P.2d 737, 752 (Alaska 1980) (thirty years with fifteen suspended for rape of a three-year-old; defendant was a first offender with a good background, but had a serious alcohol problem not likely to benefit from treatment); *Wagner v. State,* 598 P.2d 936, 937–38 (Alaska 1979) (ten years for repeated sexual relations with eleven-year-old, where victim's brothers were suborned to participate, and defendant had prior nonviolent felonies and was diagnosed as moderately antisocial); *Torres v. State,* 521 P.2d 386, 389 (Alaska 1974) (twenty years for forcible rape of fourteen-year-old, concurrent with earlier ten-year sentence for lewd and lascivious acts); *Edenshaw v. State,* 631 P.2d 506 (Alaska App.1981) (seven years for rape of ten-year-old).

■ The ten-year sentence on the lewd and lascivious acts count exceeds sentences previously approved for this offense. Qualle's repeated sexual contact with sever-

al victims, coupled with the commercial undertones to the activity, do distinguish this case from previous cases and may explain the worst offender finding but do not justify a maximum sentence for this offense.[8]

■ Finally, we have concluded that in the absence of any findings supported by substantial evidence that a limitation on parole eligibility is necessary to protect the public, the twenty-year limitation imposed here must be deemed clearly mistaken. *Spencer v. State,* 642 P.2d 1371 (Alaska App.1982). Where, as here, a crime stems from psychological problems and the record shows no clear prospects for rehabilitation, it is certainly permissible to impose a relatively long sentence with no restriction on parole eligibility, trusting the Division of Corrections to provide appropriate rehabilitation treatment and to assess whether the treatment provided has been successful so that the defendant can be released before expiration of the full term. *See generally Pyrdol v. State,* 617 P.2d 513, 515 (Alaska 1980); *Parks v. State,* 571 P.2d 1003, 1005–06 (Alaska 1977); *Bordewick v. State,* 569 P.2d 184, 187–88 (Alaska 1977). Alternatively, the court could impose a shorter sentence and limit parole eligibility. In the absence of specific fact findings supported by substantial evidence that the defendant will, regardless of treatment and supervision, remain a risk during the entirety of the extended term, the court may not do both.

■ We reject Qualle's other arguments. The superior court was authorized, given this record, to deemphasize rehabilitation and stress the need to isolate Qualle to protect the public. We reject Qualle's argument that the twenty-year limitation on parole eligibility is necessarily inconsistent with a finding that he has a slim chance for

---

**8.** *See Alvarado v. State,* 626 P.2d 582 (Alaska 1981) (eight years with three suspended for nonviolent sexual contact with 11 and 12-year-old); *Buchanan v. State,* 554 P.2d 1153, 1166 n. 47 (Alaska 1976) (five years; defendant attempted rape of a child causing physical injury and posed danger of recidivism); *Noble v. State,* 552 P.2d 142, 147–48 (Alaska 1976) (10 years; defendant had extensive prior record, used threats of violence, and showed no inclination to overcome his alcohol problem).

rehabilitation.[9] We also find that the record does not support Qualle's contention that the sentencing judge revised his assessment of Qualle's rehabilitation potential between the first and second sentencing hearings.

The judge did not abuse his discretion in denying a requested continuance. See McKinney v. State, 566 P.2d 653, 666, & n. 36 (Alaska 1977); Russell v. Municipality of Anchorage, 626 P.2d 586, 590–92 (Alaska App.1981). Qualle argues that the continuance was necessary to obtain additional psychological evidence regarding his capacity for rehabilitation. Any possible error was cured when the court chose to treat the second sentencing hearing as a continuation of the first, rather than imposing on Qualle the higher burden of persuasion associated with a Rule 35(a) motion. The record does not show, as Qualle suggests, that the trial court disregarded the material presented at the second hearing.[10]

Nor did the court err in its passing reference to Qualle as a "professional" criminal. The documentary evidence and Qualle's own admissions amply support the finding that Qualle was partially motivated by economic gain. In any event, the purpose in Donlun v. State, 527 P.2d 472, 475 (Alaska 1972), of categorizing an offender as a dangerous or professional criminal was to narrow the situations where a sentence in excess of five years should be imposed. Although Qualle disputes his categorization as a professional criminal, he does not seriously claim that he should have received a sentence under five years. Additionally, whether or not the judge correctly termed Qualle a "professional," he also found him a "dangerous" offender, i.e. a likely recidivist. Viveros v. State, 633 P.2d 289, 291 (Alaska App.1981). The facts support this categorization of Qualle, and, under Donlun and subsequent cases, this categorization alone supports a sentence in excess of five years.

The court did not rely on impermissible considerations in sentencing Qualle. The sentencing judge heard substantial evidence under oath to support his finding that Qualle was guilty of the incidents included in the dismissed counts of the indictment and of uncharged criminal sexual activity with his own children. Thus the trial court could consider this conduct in determining whether Qualle was dangerous, i.e. a likely recidivist. Buchanan v. State, 554 P.2d 1153, 1166 (Alaska 1976). Qualle's efforts to distinguish Nukapigak v. State, 576 P.2d 982, 983–84 (Alaska 1978), and to apply Waters v. State, 483 P.2d 199, 203 (Alaska 1971), to his case are unconvincing. Waters simply stands for the proposition that an indictment standing alone is a pleading, not evidence of the facts contained within it. If the prosecution wishes to rely on other crimes or antisocial activity which do not result in convictions to enhance a sentence, it must prove that the defendant committed them. It may not rely on the fact that charges have been brought. Here, the prosecution relied on admissible evidence of Qualle's guilt of each incident discussed, including his own admissions. See Mangold v. State, 613 P.2d 272, 274–76 (Alaska 1980); Buchanan v. State, 554 P.2d at 1166; Evans v. State, 550 P.2d 830, 847 (Alaska 1976).

Qualle also complains that he was not expressly given credit for time already served in prison. Such credit is, however, awarded automatically by statute, AS 12.-55.025(c), former AS 11.05.040, and is not dependent on the judge's stating that credit should be given. Nonetheless, judgment forms should expressly state that the defendant will receive credit for time served

9. See Morgan v. State, 582 P.2d 1017, 1028–30 (Alaska 1978); see also Post v. State, 580 P.2d 304, 308–09 (Alaska 1978). See generally Shagloak v. State, 582 P.2d 1034, 1040 (Alaska 1978) (the obligation to consider rehabilitation is satisfied if the court realistically assesses rehabilitation in conjunction with the other goals of penal administration; moreover, a long sentence is not necessarily against the defendant's rehabilitative interest).

10. Some of the testimony for the second hearing was taken by a different judge, but the sentencing judge specifically stated that he had listened to a recording of this testimony and that he "had had an opportunity to go over the matters very carefully."

in order to protect defendants who may serve all or part of their terms in out-of-state prisons. *Ferreira v. State,* 602 P.2d 803, 806 (Alaska 1979); *Mills v. State,* 592 P.2d 1247, 1248 (Alaska 1979); *Black v. State,* 569 P.2d 804, 806 (Alaska 1977). The state has voiced no objection to the court's substituting a revised judgment form including an order allowing Qualle credit for time served. Following the resentencing hearing, a revised judgment form expressly indicating credit for time served should be entered.

Qualle's sentence is therefore VACATED and this case REMANDED for further proceedings consistent with this opinion. On resentencing, his total sentence should not exceed twenty-one years with parole eligibility after serving one third of his sentence, at the discretion of the parole board.

BRYNER, C.J., not participating.

SINGLETON, Judge, concurring.

I concur in the result. I recognize that this case was decided under prior law and that the provisions of the new code are not therefore binding. *See Sundberg v. State,* 652 P.2d 113 (Alaska App.1982) (Sundberg II decided by this court today). Nevertheless, the majority has elected to evaluate this case under the new code prompting these additional comments. Given the substantial number of similar cases involving sexual abuse of children with substantially disparate sentences, I would prefer a rule which would attack this disparity directly by: (1) precluding a sentence for a first offender convicted of a class A felony (in the absence of statutory aggravating factors under AS 12.55.155) that exceeds a presumptive term for a class A felony offender who uses a firearm or causes serious physical injury, *see* AS 12.55.-125(c)(1), or in the case of those convicted of class B and C felonies, that exceeds the presumptive term for a second offender and (2) precluding consecutive sentences, unless the trial court made an express finding supported by substantial evidence that the presumptive sentence for a second offender, taking into account all proven aggravating

factors for the most serious offense, was inadequate to protect the public from the defendant. *Lacquement v. State,* 644 P.2d 856, (Alaska App.1982). *See also Mutschler v. State,* 560 P.2d 377 (Alaska 1977). Such a determination, in my opinion, must be made on the basis of the aggravating factors specified in the code as well as the defendant's criminal record, if any, and the number of the defendant's victims. The legislature clearly intended first offenders to be eligible for nonincarcerative sentences where second offenders would have to go to prison, but there is nothing in the code or its legislative history which suggests that a first offender not subject to presumptive sentencing should ever receive a more severe sentence than the same individual committing the same crime in the same way would have received had he been subject to presumptive sentencing. To conclude otherwise is to treat a prior felony, the use of a firearm or serious injury to the victim, in effect, as mitigating factors, raising serious equal protection problems. *Griffith v. State,* 641 P.2d 228 (Alaska App.1982).

Nevertheless, this is an old code case and I agree that Qualle presents a substantial risk of recidivism, precluding a determination in his case that twenty-one years of supervision is clearly mistaken. I would agree that a sentence for Qualle in excess of twenty-one years would not be consistent with *Hintz v. State,* 627 P.2d 207 (Alaska 1981) and *Tookak v. State,* 648 P.2d 1018, (Alaska App., 1982) (both of which involved consecutive sentences for aggravated kidnapping and forcible rape by defendants with prior felony convictions). Moreover, in *Helmer v. State,* 616 P.2d 884 (Alaska 1980) for a rape, assault with intent to kill and burglary in a dwelling conviction, the court reduced a sentence from thirty to twenty-five years, even though the youthful assailant there intended to kill his victim and inflicted serious and permanent injuries upon her. While Qualle is substantially older than Helmer, both are first offenders and Helmer's crime appears more aggravated.