Peter KRACK, Appellant,

v.

STATE of Alaska, Appellee.

No. A–6783.

Court of Appeals of Alaska.

Jan. 15, 1999.

Christine S. Schleuss, Suddock & Schleuss, P.C., Anchorage, for Appellant.

W.H. Hawley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

STEWART, Judge.

Peter Krack is a pharmacist and a pederast. Combining his easy access to drugs with cash and presents, he preyed on a generation of boys. Pursuant to a bargain with the State, Krack pleaded no contest to a representative group of charges covering both his misconduct with controlled substances and his sexual abuse of minors. Krack argues that his composite 28–year term to serve is excessive. Because we are not convinced that his term to serve is clearly mistaken, we affirm.

### Facts and proceedings

Krack graduated from the University of New Mexico in 1975 with a degree in pharmacology. He worked in Cuba, New Mexico, as a pharmacist until 1983. He left after an investigation by the New Mexico State Police

into his conduct with boys. During an interview with the New Mexico State Police, Krack admitted that he had performed fellatio on five boys. The police interviewed three of those five, and each of the three reported that Krack had paid money for each act of fellatio. In his interview Krack said, "from what I've read on this, that the majority of the harm to the boys doesn't come from anything that I might have done, but from the way the parents and authorities tend to react to it." Krack expressed a desire to get professional help. After his conduct was discovered, family members of Krack's victims physically assaulted him.

The New Mexico authorities reacted by placing Krack on "Pre-prosecution Diversion." The terms of his Diversion required that Krack leave New Mexico. He left and moved to Dillingham, Alaska, to become a pharmacist at Kanakanak Hospital.

Shortly after he settled in Dillingham, Krack began the same conduct that was discovered by the authorities in New Mexico. Over the next fourteen years, he sought out boys with whom he had gained a measure of trust. Twenty-six victims from Dillingham were discovered during the investigation. Krack's method of seduction with each victim was similar. He would start by inviting a boy to his house, often with other victims already present. He would provide the boy with access to sexually explicit material and encourage sexual activity; he would offer his victims money to engage in sexual conduct with him; he would obtain drugs from the pharmacy that he would abuse himself and that he would give to his victims; he engaged in any sexual conduct with his victims that he could, but if he could convince them, he would engage in fellatio and anal intercourse.

The police began an investigation of Krack's sexual and drug misconduct after 17–year–old M.C., who the police were interviewing about a firearm that had been stolen from Krack's residence, described Krack's sexual and drug activity with boys in Dillingham. The police arranged for a *Glass*[1] warrant and monitored the conversation between Krack and R.N., which showed Krack's willingness to engage in sexual misconduct. Krack was arrested shortly thereafter. In the jacket he wore when he was arrested, Krack had a pill bottle containing narcotics, stimulants, and anti-anxiety pills. During the execution of a search warrant on Krack's residence, the police discovered over a thousand pills of over twenty different types of drugs, a couple of mostly empty bottles of pharmaceutical cocaine, and some hypodermic needles. Included among the pills were Dilaudid, morphine, codeine, and Dexedrine. Two of Krack's victims have committed suicide: A.V. in New Mexico in 1994 and V.L. in Dillingham in 1997, a couple of days after he was contacted during the investigation.

In three different presentations to the grand jury in January and February of 1997, the grand jury indicted Krack on 60 different counts: fourteen counts of misconduct involving controlled substances in the first degree,[2] seven counts of misconduct involving controlled substances in the fourth degree,[3] one count of sexual abuse of a minor in the first degree,[4] twenty-nine counts of sexual abuse of a minor in the second degree,[5] three counts of attempted sexual abuse of a minor in the second degree,[6] and six counts of sexual abuse of a minor in the third degree.[7]

On April 1, 1997, pursuant to a plea agreement with the State, Krack entered a no contest plea to an information charging seven counts: one count of first-degree misconduct involving a controlled substance; one count of fourth-degree misconduct involving a controlled substance; three counts of second-degree sexual abuse of a minor; and two counts of third-degree sexual abuse of a minor. The only restriction on Krack's sentence in the plea agreement was that no more than 15 years to serve could be imposed on the first-degree drug misconduct

1. *State v. Glass,* 583 P.2d 872 (Alaska 1978).

2. AS 11.71.010(a)(2).

3. AS 11.71.040(a)(3)(A).

4. AS 11.41.434(a)(1).

5. AS 11.41.436(a)(1).

6. AS 11.41.436(a)(1) & AS 11.31.100(a).

7. AS 11.41.438(a)(1).

charge. The prosecution also agreed not to file any more charges against Krack for offenses that occurred while he was employed at Kanakanak Hospital and agreed to cease its investigation of Krack's drug diversions.

In count I, Krack was charged with possessing the amphetamine that was among the pills he had in a small bottle in the coat he asked to wear to jail when he was arrested.

In count II, Krack was charged with performing fellatio on 15–year–old R.N. in April of 1996. According to R.N., a couple of his friends first brought him to Krack's house around March of 1996. He returned frequently and would look at Krack's sexually explicit magazines and movies. Krack bet R.N. a hundred dollars that his penis was not longer than 6 inches. When R.N. exposed his penis, Krack paid him $100. During later visits, Krack masturbated in front of R.N. and convinced R.N. to masturbate in front of him. They began masturbating each other. Krack began performing fellatio on R.N. and convinced R.N. to perform fellatio on him. R.N. reported that sometime in the fall of 1996, Krack paid him $200 to have anal intercourse. R.N. reported that Krack had also supplied him and other boys with drugs.

On January 15, 1997, R.N. assisted the police in the service of the *Glass* warrant. He wore a wire and went to Krack's house. Krack asked that R.N. bring a third boy over for group sex. Krack brought out a blow-up doll that they both used as a sex aid. Krack fondled R.N.'s genitals and asked R.N. to place R.N.'s penis in Krack's mouth, but R.N. declined and left.

In count III, Krack was charged with performing fellatio on 14–year–old J.B. in the spring of 1996. J.B. reported that he was introduced to Krack in the summer of 1995 by another boy. He would visit Krack's residence frequently. Krack started paying him money to masturbate in front of Krack. Later, Krack would masturbate and fellate J.B. and would pay him for the sexual encounters.

In count IV, Krack was charged with causing 15–year–old M.C. to masturbate in front of Krack during 1995. M.C. reported that some of his friends first introduced him to Krack when he was 12. Krack provided M.C. and his friends with fireworks. Krack paid him cash to masturbate. Krack would eat M.C.'s semen.

M.C. stayed away from Krack for a couple of years but returned when he was about 15. Krack paid M.C. to allow Krack to perform fellatio on him. M.C. continued to visit Krack's house up until a few days before the police arrested Krack.

In count V, Krack was charged with delivering amphetamine to 14–year–old N.S. in November of 1995. N.S. reported that he met Krack when he was 13. His mother worked at the Kanakanak Hospital and introduced her son to Krack so that Krack could be a "big brother" for N.S.

N.S. reported that he went to Krack's house along with other boys. Krack supplied him with "speed" and "THC, Delta Nine" drug capsules. The November 1995 delivery occurred when Krack and N.S. came to Anchorage for the Great Alaska Shootout. Whenever Krack traveled, N.S. said that he brought an inventory of drugs "from pain killers and downers to THC and speed."

In count VI, Krack was charged with causing 14–year–old B.H. to masturbate in front of him in the summer of 1994. B.H. reported that he met Krack when he was about 12. When he visited Krack's house, there were most often other boys there and they would often watch sexually explicit movies. B.H. reported that Krack paid him $200 to masturbate with him while they were camping near Dillingham.

In count VII, Krack was charged with performing fellatio on 13–year–old G.T. in the winter of 1984–85. G.T. reported that he met Krack in 1983 or 1984. G.T. said that Krack started talking with him when he was waiting for the school bus at the hospital compound. He said that Krack did not start asking for sexual favors until some time had passed. G.T. said that Krack gave him gifts when he allowed Krack to perform fellatio on him. In addition, he reported that Krack also gave him access to drugs, including marijuana and morphine, and offered him cocaine. According to G.T., Krack engaged in sex acts with him, including anal intercourse, until G.T. moved away from Dillingham.

Krack was not subject to presumptive sentencing, although he faced a minimum 5–year sentence on count V, first-degree misconduct involving a controlled substance.[8] The State contended that a number of statutory aggravating factors applied by analogy to Krack's sentencing.[9] Judge Andrews found that the State proved aggravating factor (c)(10) [10] with respect to count I. Krack conceded that (c)(10) applied to counts II, III, IV, VI, and VII. In addition, Krack conceded that aggravating factor (c)(18) [11] applied to all the sexual abuse counts, that is, counts II, III, IV, VI, and VII. Krack also conceded that aggravating factor (c)(21) [12] applied to counts I, II, III, IV, VI, and VII. Krack contended that mitigating factors (d)(9) [13] and (d)(14) [14] applied to count V, but Judge Andrews did not agree.

Judge Andrews found that Krack was a very skilled manipulator of children. She found that the psychological examination of Krack gave her no reason "to view the defendant as amenable to treatment." Judge Andrews also found that Krack has "a very ingrained deviant sexual pattern that makes him a predator in the most subtle sense of the word, and that that has been going on for a very long period of time."

Further, Judge Andrews concluded that he was not a first offender in terms of his personal history. She also concluded that his experience in New Mexico provided him with the chance for rehabilitation. As she found, Krack was caught by the police in New Mexico and confronted with prosecution. He announced that he understood his need for professional help. Judge Andrews found that he had the ability to receive assistance,

and did not. She found that he was forced to uproot himself from his professional and personal life and that the New Mexico incident was a "sledgehammer." In spite of the impact of the incident, and his knowledge of his need for assistance, she found that Krack chose to relocate to the relatively rural location of Dillingham and chose not to get treatment.

Judge Andrews found that the sophistication and the manner in which Krack obtained and utilized drugs was unique. Finally, Judge Andrews found that Krack had engaged in conduct with G.T. when he was twelve going on thirteen, which would constitute first-degree sexual abuse of a minor.[15]

When Judge Andrews considered the *Chaney* [16] criteria, she emphasized isolation because she had "so little confidence in the rehabilitation potential of the defendant." She thought that his chances for rehabilitation were "pretty dismal." Moreover, she concluded that Krack was such a danger to the public that she could not impose a sentence long enough to protect the public because she could not impose "a lifetime behind bars." Judge Andrews also emphasized community condemnation.

On the drug offenses, Judge Andrews imposed a 20–year term with 5 years suspended on count V and a concurrent 3–year term on count I. On the sexual abuse offenses, Judge Andrews imposed 6 years with 3 suspended on count II, 6 years with 3 suspended on count III, 4 years with 2 suspended on count IV, 4 years with 2 suspended on count VI, and 7 years with 4 suspended on count VII. The sentences on the sex offenses were con-

---

8. AS 12.55.125(b).

9. *See Wylie v. State,* 797 P.2d 651, 662 (Alaska App.1990).

10. AS 12.55.155(c)(10) (defendant's conduct was among the most serious in the definition of the offense).

11. AS 12.55.155(c)(18)(B) (defendant "has engaged in the same or [similar] conduct … involving the same or another victim").

12. AS 12.55.155(c)(21) (defendant had a history of repeated criminal violations similar in nature to the present offense).

13. AS 12.55.155(d)(9) (defendant's conduct was among the least serious within the definition of the offense).

14. AS 12.55.155(d)(14) (offense involved small quantities of a controlled substance).

15. AS 11.41.434(a)(1).

16. *State v. Chaney,* 477 P.2d 441, 443–44 (Alaska 1970).

secutive to each other and consecutive to the sentences on the drug offenses. Krack's composite sentence was 47 years with 19 years suspended, yielding a composite 28–year term to serve.

### Discussion

 Krack argues that Judge Andrews erred when she failed to find the small-quantity mitigating factor that he alleged was applicable to a consideration of his sentence on count V. This claim is moot. Presumptive sentencing does not apply to first-degree misconduct involving a controlled substance which is an unclassified felony with a minimum 5–year sentence and a maximum 99–year sentence.[17] Judge Andrews found that the small quantities mitigating factor was not proven by clear and convincing evidence, but she did recognize that the amount of drugs was small and would consider that small amount in sentencing. This was perfectly appropriate. While the consideration of statutory aggravating and mitigating factors can provide a useful guide for the consideration of an appropriate sentence for an unclassified felony,[18] because the standards of presumptive sentencing do not apply, Judge Andrews was authorized to consider the amount of drugs involved without proof of the mitigating factor by clear and convincing evidence.

Krack contends that his 28–year composite sentence is excessive. As explained above, Krack was convicted of one count of first-degree misconduct involving a controlled substance (distributing schedule IA, schedule IIA, and schedule IIIA controlled substances to minors) which had a sentencing range of 5 to 99 years. Krack was also convicted of several counts of second-degree sexual abuse of a minor (engaging in sexual penetration with children between the ages of 13 and 16).

Those offenses were class B felonies, with a sentencing range of 0 to 10 years.[19]

In our sentencing decisions dealing with defendants convicted of *first*-degree sexual abuse of a minor (sexual penetration with children under the age of 13), this court has established a sentencing range of 10 to 15 years' imprisonment for aggravated instances of this crime.[20] In a few exceptional cases, we have approved even longer sentences—sentences of up to 21 years to serve.[21]

But first-degree sexual abuse of a minor is an unclassified felony with a presumptive term of 8 years' imprisonment for first felony offenders and a maximum term of 30 years' imprisonment.[22] Krack was convicted of a lesser degree of crime—a class B felony—for which the statutorily prescribed penalties are considerably less severe. We have never approved a sentence of more than 12 years' imprisonment for a defendant convicted of second-degree sexual abuse of a minor.[23] Based on this distinction, Krack argues that his composite sentence is clearly mistaken.

The key to analyzing Krack's claim of excessive sentence is to remember that Krack was convicted, not only of second-degree sexual abuse of a minor, but also of first-degree misconduct involving controlled substances. Only 13 years of Krack's composite prison term is attributable to his sexual abuse convictions; the remaining 15 years is attributable to Krack's drug conviction.

As noted above, first-degree controlled substance misconduct is an unclassified felony with a maximum penalty of 99 years' imprisonment. Because Krack was convicted of distributing drugs to minors, our past sentencing decisions dealing with defendants convicted of second-degree sexual abuse of a minor do not govern our analysis of Krack's

17. See AS 11.71.010(c) & AS 12.55.125(b).

18. See Gregory v. State, 689 P.2d 508, 509 (Alaska App.1984).

19. See AS 11.41.436(b) & AS 12.55.125(d).

20. See State v. Andrews, 707 P.2d 900, 913–14 (Alaska App.1985), aff'd, 723 P.2d 85 (Alaska 1986).

21. See Lewis v. State, 706 P.2d 715, 717 (Alaska App.1985); Seymore v. State, 655 P.2d 786, 788 (Alaska App.1982); Qualle v. State, 652 P.2d 481, 488 (Alaska App.1982).

22. See AS 11.41.434(b) & AS 12.55.125(i).

23. See generally Williams v. State, 928 P.2d 600, 609 (Alaska App.1996); Kirlin v. State, 779 P.2d 1251 (Alaska App.1989).

overall sentence. The plain fact is that the penalty for distributing drugs to minors is much more severe than the penalty for sexually abusing them.

Moreover, under the facts of this case, Krack faced the substantial possibility of a lengthy sentence for his drug offense. His conduct in committing this offense was plainly aggravated. Although Krack pleaded no contest to only one count of this offense, the record reveals that he committed the offense numerous times and with numerous victims. Further, Krack abused his position as a pharmacist to obtain the drugs. Both Krack and the State seemingly recognized that Krack could potentially receive a lengthy sentence for his drug offense: one of the express terms of the plea agreement was the stipulation that Krack's sentence for first-degree controlled substance misconduct would not exceed 15 years to serve.

When we review a composite sentence imposed for several criminal convictions, we assess whether the defendant's combined sentence is clearly mistaken, given the whole of the defendant's conduct and history.[24] The record in the present case reveals that Krack sexually abused dozens of boys over a period of fifteen years in two different states. Krack accepted banishment from New Mexico to escape prosecution for his acts of sexual abuse in that state. Krack then came to Alaska, where he committed many more acts of sexual abuse. To entice and manipulate his victims, Krack took advantage of his position as a pharmacist to repeatedly distribute controlled substances to these minors.

While the 13–year component of Krack's sentence attributable to his second-degree sexual abuse convictions is more severe than any sentence we have reviewed in the past, the blameworthiness of Krack's sexual misconduct equals or exceeds the conduct of defendants in past cases. Moreover, we believe that, under the circumstances, the 15–year term Krack received for his drug offense represents a lenient sentence for that criminal conduct. In sum, when we gauge Krack's composite sentence against the totality of his conduct, we conclude that the 28–year prison term, while admittedly severe, is not clearly mistaken.[25]

*Conclusion*

The judgment of the superior court is AFFIRMED.

**24.** *See Neal v. State,* 628 P.2d 19, 21 n. 8 (Alaska 1981); *Comegys v. State,* 747 P.2d 554, 558–59 (Alaska App.1987).

**25.** *See McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).