NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

ROCKY JAY BURNS,

                                    Appellant,

              v.

STATE OF ALASKA,

                                    Appellee.

Court of Appeals No. A-13793
Trial Court No. 3AN-15-08427 CR

O P I N I O N

No. 2771 — February 2, 2024

Appeal from the Superior Court, Third Judicial District, Anchorage, Erin B. Marston, Judge.

Appearances: Rocky Jay Burns, *in propia persona*, Wasilla, Appellant. Eric A. Ringsmuth, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Harbison and Terrell, Judges.

Judge HARBISON.

Rocky Jay Burns was found guilty, following a bench trial, of one count of first-degree misconduct involving a controlled substance (for obtaining substantial income by committing five or more drug offenses for operating an unregistered marijuana sales and delivery business from January to September 2015), six counts of fourth-degree misconduct involving a controlled substance (for delivering more than

one ounce of marijuana on six occasions in 2015), and one count of fifth-degree misconduct involving a controlled substance, a misdemeanor (for delivering less than one ounce of marijuana in January 2015).[1] The fourth-degree drug misconduct counts were dismissed by the State prior to Burns's sentencing.[2]

Burns appeals his remaining felony conviction, arguing that a 2014 ballot initiative repealed both the statute that classifies marijuana as a controlled substance[3] and the statute for first-degree misconduct involving a controlled substance.[4] He also contends that the sentence imposed for this offense — 5 years to serve with no suspended time — was outside of the superior court's sentencing authority and imposed contrary to the rule of lenity. For the reasons explained in this opinion, we reject these claims.

*Factual and procedural background*

In November 2014, voters approved a ballot initiative entitled, "An Act to Tax and Regulate the Production, Sale, and Use of Marijuana."[5] Under authority from the Alaska Constitution, this initiative enacted AS 17.38.010 – AS 17.38.900.[6] These

---

[1] AS 11.71.010(a)(3), former AS 11.71.040(a)(2) (2015), and former AS 11.71.050(a)(1) (2015), respectively.

[2] *See* Alaska R. Crim. P. 43(a)(1).

[3] AS 11.71.190(b).

[4] AS 11.71.010.

[5] SLA 2014, Initiative Measure. 2.

[6] *See* Alaska Const. art. XI, §§ 1, 4, 6.

statutes legalized, under Alaska law, certain personal use of marijuana by adults[7] as well as specific activities by registered marijuana businesses.[8]

The ballot initiative declared that marijuana regulations were to be created within nine months of the initiative's effective date (*i.e.*, in the nine months following February 24, 2015).[9] The initiative also declared that a Marijuana Control Board would "begin accepting and processing applications to operate marijuana businesses one year after the effective date of this act" (*i.e.*, it would begin accepting such applications on February 24, 2016).[10] Thus, in May 2015, the legislature amended AS 17.38 by adding a provision establishing the Marijuana Control Board and tasking it with registering and regulating marijuana businesses.[11]

In April 2016, a grand jury indicted Burns for one count of first-degree misconduct involving a controlled substance and nine counts of fourth-degree misconduct involving a controlled substance. The State later reduced one of the counts of fourth-degree misconduct involving a controlled substance to fifth-degree misconduct involving a controlled substance, a misdemeanor.

With regard to the fifth-degree misconduct involving a controlled substance charge, the State alleged that, on January 28, 2015, Burns, acting as a principal or an accomplice, delivered less than one ounce of marijuana.[12]

With regard to the counts of fourth-degree misconduct involving a controlled substance, the State alleged that from June through September 2015, Burns,

---

[7]   AS 17.38.020.

[8]   AS 17.38.070.

[9]   Former AS 17.38.090(a) (2015).

[10]   Former AS 17.38.100(b) (2015).

[11]   AS 17.38.080.

[12]   Former AS 11.71.050(a)(1) (2015).

acting as a principal or an accomplice, knowingly delivered more than one ounce of marijuana on eight different occasions.[13] (The State dismissed two of these charges before trial, leaving six counts of fourth-degree drug misconduct.)

With regard to the first-degree misconduct involving a controlled substance charge, the State alleged that, between January 1, 2015 and September 17, 2015, Burns, acting as a principal or an accomplice, knowingly engaged in a "continuing criminal enterprise."[14] For purposes of this statute, a person is engaged in a "continuing criminal enterprise" if they obtain substantial income or resources by committing a series of five or more violations of AS 11.71, at least one of which is punishable as a felony, and they do so in concert with at least five other people who they organize, supervise, or otherwise manage.[15] The State alleged that the six counts of fourth-degree misconduct involving a controlled substance were the offenses required to establish that Burns was guilty of first-degree misconduct involving a controlled substance.

After significant motion practice, the case proceeded to a bench trial. During the trial, the State presented evidence that Burns earned over $700,000 by selling and delivering marijuana through his unregistered business, Discreet Deliveries, between January 1, 2015 and September 17, 2015. Burns's co-defendant and former business partner, Larry Stamper, testified that he and Burns began operating Discreet Deliveries after the ballot initiative was approved. They purchased marijuana from growers, packaged the marijuana, and then delivered it to customers. As Discreet Deliveries grew its business, it hired fifteen employees and rented office space. Between January and September 2015, the business conducted over 5,000 transactions.

---

[13] Former AS 11.71.040(a)(2) (2015).

[14] AS 11.71.010(a)(3).

[15] AS 11.71.010(b).

Cynthia Franklin, the former director of the Alaska Alcoholic Beverage Control Board and the Marijuana Control Board, testified during the State's case. She explained that the Marijuana Control Board was tasked with drafting and enforcing marijuana regulations, and that the ballot initiative had given the Board until November 2015 to complete drafting the regulations. Franklin stated that, given the deadline and the nature of growing a plant (*i.e.*, marijuana), "nobody was really conducting [marijuana retail] business legally in Alaska . . . until well into 2016." The director of the Alaska Alcohol and Marijuana Control Office, Erika McConnell, similarly testified that the Marijuana Control Board first issued licenses to marijuana-related businesses in "the second half of 2016," and that in 2015, the board did not issue any licenses to marijuana retail businesses.

Around May 2015, Franklin wrote a letter to unregistered marijuana-related businesses, including Discreet Deliveries, informing them that they were operating illegally. (Burns subsequently testified that he did not receive this letter but did read about it in the newspaper.)

On August 6, 2015, Anchorage police officers served search warrants on Discreet Deliveries' warehouse and Burns's residence. Detective Michele Logan testified at trial that the police recovered boxes of envelopes, some empty and some full of cash, from these locations. Each envelope contained information about a marijuana transaction, including customer information, the amount of marijuana that was sold, and the price paid. A total of 5,536 envelopes were analyzed, including many showing that the customer had ordered and received more than one ounce of marijuana. The police also recovered a whiteboard with a table indicating that Discreet Deliveries earned $746,173 between January and the end of July.

The police later obtained a copy of Discreet Deliveries' payroll files, which indicated that Discreet Deliveries employed fifteen people. Several police officers testified that they had engaged in undercover purchases of one ounce or more of marijuana from Discreet Deliveries between June and August 2015.

After the State rested its case, Burns moved for a judgment of acquittal, arguing that the ballot initiative had impliedly repealed the criminal laws relating to marijuana and that the State had not proved that he intended to deliver one ounce or more of marijuana. The court denied the motion.

Burns then testified on his own behalf. He admitted that the fifth-degree misconduct involving a controlled substance charge against him was "legitimate" because the conduct occurred before February 24, 2015 (the effective date of the ballot initiative), but he challenged the remaining charges relating to conduct that occurred after that date. During his testimony, Burns did not deny that he and Stamper had operated Discreet Deliveries, nor did he dispute that Discreet Deliveries was a marijuana sales and delivery business that had at least five employees. Burns also did not deny that he had earned over $700,000 by selling and delivering marijuana through Discreet Deliveries in 2015.

Instead, Burns made the following assertions that he believed relieved him of criminal culpability: that the criminal statutes pertaining to marijuana had been "superseded" by the ballot initiative for transactions involving less than one ounce of marijuana; that he never intended for his employees to sell one ounce or more in any transaction; and that he believed he was operating legally under the "personal use section" of the initiative (by assisting others in acquiring less than one ounce of marijuana[16]) until additional regulations were promulgated by the Marijuana Control Board.

The superior court found Burns guilty as charged. Prior to sentencing, the State dismissed the six remaining counts of fourth-degree misconduct involving a controlled substance, and Burns was sentenced only for one count of first-degree and one count of fifth-degree misconduct involving a controlled substance.

---

[16]  *See* AS 17.38.020(1), (5).

The superior court imposed a sentence of 5 years to serve with no time suspended for the first-degree misconduct involving a controlled substance conviction[17] and 30 days with no time suspended for the fifth-degree misconduct involving a controlled substance conviction.[18] The court ordered that the sentences would be served concurrently, and it recommended that Burns be permitted to serve the sentence on ankle monitoring.

This appeal followed.

*Why we reject Burns's claim that AS 17.38 implicitly repealed the statutes criminalizing marijuana-related conduct*

On appeal, Burns contends that the 2014 initiative that was codified as AS 17.38 impliedly repealed AS 11.71.190(b), the statute declaring that marijuana is a schedule VIA controlled substance, and with it, all of the laws that criminalize marijuana-related conduct.

Alaska's appellate courts have recognized two categories of implied repeal.[19] First, when provisions in "two acts are in irreconcilable conflict, the later act . . . constitutes an implied repeal" of the conflicting provisions of the earlier act.[20] Second, when a "later act covers the whole subject of [an] earlier one and is clearly intended as a substitute," the later act constitutes an implied repeal of the earlier one.[21]

---

[17]  *See* AS 12.55.125(b) (providing the applicable sentencing range of 5 to 99 years).

[18]  *See* AS 12.55.135(a) (providing the applicable sentencing range of 0 to 1 year).

[19]  *See Good v. Anchorage*, 450 P.3d 693, 696 (Alaska App. 2019) (quoting *Peter v. State*, 531 P.2d 1263, 1267 (Alaska 1975)).

[20]  *Id.*

[21]  *Id.*

Burns claims that there is an irreconcilable conflict between AS 17.38 and AS 11.71.190(b). According to Burns, the new laws permitting some adult personal use of marijuana and allowing certain marijuana-related commercial activity by registered businesses are in irreconcilable conflict with the statutes placing marijuana on the controlled substance list and criminalizing certain marijuana-related activity.

We have explained that, in assessing whether there is an irreconcilable conflict between statutes, the "legislative intent is key."[22] For this reason, we examine the totality of the relevant legislative framework, interpretating the statutes in context rather than isolation, with a view to reconciling any conflict and producing a harmonious whole.[23] If our examination reveals that enforcement of the prior statute cannot be reconciled with the legislative purpose of the new statute, we will deem the prior statute to have been impliedly repealed.[24]

Prior to the 2014 ballot initiative, most marijuana-related activity (other than adult personal use within the home and medical marijuana use[25]) was classified as a criminal offense. This was accomplished by statutes which classified marijuana as a schedule VIA controlled substance,[26] hashish ("the dried, compressed, resinous product

---

[22] *Id.* at 698 (citing *Progressive Ins. Co. v. Simmons*, 953 P.2d 510, 516 (Alaska 1998)).

[23] *Id.*

[24] *See id.*

[25] *See Ravin v. State*, 537 P.2d 494, 504 (Alaska 1975) (holding that adult personal use within the home is a privacy right under the Alaska Constitution); AS 17.37.010-.080 (pertaining to medical marijuana).

[26] AS 11.71.190(b).

of" a marijuana plant) as a schedule IIIA controlled substance,[27] and which criminalized certain conduct involving these substances.[28]

The 2014 ballot initiative, which was codified as AS 17.38, legalized the personal use of marijuana for adults, and it included hashish in the definition of marijuana.[29] Under these statutes, adults twenty-one years of age or older can lawfully possess, use, display, purchase, and transport one ounce or less of marijuana,[30] and may assist or support another person who is at least twenty-one years old in any of those acts.[31]

The legislation also legalized the operation of four types of marijuana-related businesses — retail marijuana stores, marijuana cultivation facilities, marijuana product manufacturing facilities, and marijuana testing facilities — as long as these businesses engaged in only certain proscribed activities and as long as they had a "current, valid registration."[32]

The legislation contains an express statement of its purpose, stating that the statutes in AS 17.38 are intended to "allow[] law enforcement to focus on violent

---

[27] AS 11.71.160(f); *see also* AS 11.71.900(11).

[28] *See, e.g.*, AS 11.71.030(a)(2); former AS 11.71.040(a)(2), (4) (2014); former AS 11.71.050(a)(1), (2)(E) (2014); former AS 11.71.060 (2014).

[29] AS 17.38.020 ("Notwithstanding any other provision of law, except as otherwise provided in this chapter, the following acts, by persons 21 years of age or older, are lawful and are not criminal or civil offenses."); AS 17.38.900(10).

[30] We note that although these statutes legalized certain marijuana activity under Alaska law, they have no impact on federal marijuana laws.

[31] AS 17.38.020(a)(1), (5). Burns testified at trial that he presumed that his business was legally "assisting" others in the personal use of marijuana.

[32] AS 17.38.070.

and property crimes, and to enhance individual freedom."[33] The statutes aim to regulate "the production and sale of marijuana" in order to promote "the health and public safety of our citizenry," explaining that "legitimate, taxpaying business people, and not criminal actors, will conduct sales of marijuana" and that "marijuana sold by regulated businesses will be labeled and subject to additional regulations to ensure that consumers are informed and protected."[34]

On appeal, Burns contends that because the provisions under AS 17.38 declare that specific acts are permitted "[n]otwithstanding any other provision of law,"[35] these statutes irreconcilably conflict with the statute placing marijuana on the controlled substances list and the statutes that criminalize marijuana-related conduct.

We do not agree with Burns's contention. Under the plain language of AS 17.38, its provisions legalize only (1) certain use of one ounce or less of marijuana, including hashish, by adults twenty-one and older,[36] (2) certain personal cultivation of marijuana,[37] and (3) certain marijuana-related commercial conduct by businesses registered by the Marijuana Control Board.[38] Because AS 17.38 provides a narrow carve-out from AS 11.71, legalizing some, but not all, marijuana-related conduct, AS 17.38 and AS 11.71 can be interpreted harmoniously and in alignment with the legislation's stated purpose of legalizing certain adult personal use of marijuana and creating a *regulated* marijuana industry. The electorate's goal was not to legalize all marijuana-related conduct; instead, Alaskan citizens intended to regulate marijuana in

---

[33]  AS 17.38.010(a).

[34]  AS 17.38.010(b)(2)-(3).

[35]  *See* AS 17.38.020; AS 17.38.070.

[36]  AS 17.38.020.

[37]  AS 17.38.030.

[38]  AS 17.38.070(a)-(e); *see also* AS 17.38.121(a), (b)(1)-(3); AS 17.38.200.

order to promote the health and safety of the public and to focus law-enforcement resources on violent and property crimes.[39] Therefore, nothing about the purpose of AS 17.38 is inconsistent with marijuana continuing to be a controlled substance.[40]

Burns raises other arguments to support his contention that AS 17.38 repealed the statute classifying marijuana as a controlled substance and the statutes that criminalize marijuana-related conduct. For example, he argues that because AS 17.38.900 includes a definition of marijuana that differs from the definition of marijuana in AS 11.71.900, AS 17.38 impliedly repealed AS 11.71.190. But the only difference between the two definitions is that the newer definition includes marijuana "resin" and "compound[s], manufacture[s], salt[s], derivative[s], mixture[s], or preparation[s]" of marijuana resin while AS 11.71.900's definition does not. While this may suggest that the electorate intended to amend the definition of marijuana to include hashish and other resin products, it does not suggest that the electorate intended to remove marijuana or hashish from the controlled substance list altogether.

Burns also claims that if AS 17.38 did not impliedly repeal the statutes that criminalize marijuana-related conduct, then even lawfully registered marijuana businesses are violating AS 11.71.010. Burns asserts this is an "absurd" result that would be contrary to the expressly intended purpose of the ballot initiative. To support his claim, Burns notes that the statute for first-degree misconduct involving a controlled substance criminalizes conduct "[e]xcept as authorized under AS 17.30"[41] (the statutory scheme that permits manufacture and distribution of controlled substances by persons

---

[39] AS 17.38.010.

[40] *Cf.* Audio of House Labor and Commerce Committee, House Bill 123, testimony of Cynthia Franklin, Executive Director, Alcoholic Beverage Control Board, 3:28:57 – 3:31:02 p.m. (March 27, 2015) (testifying that the Marijuana Control Board needs enforcement authority over black market marijuana-related commercial activities).

[41] AS 11.71.010.

in compliance with the federal Controlled Substances Act[42]). According to Burns, because the law contains an exception for conduct "under AS 17.30" but does not also contain an exception for conduct legalized under the ballot initiative, even registered retail marijuana businesses are violating this provision.

But a thorough reading of the entire title demonstrates that Burns misunderstands the first-degree misconduct involving a controlled substance statute. As we are about to explain, despite its failure to provide an exception for conduct authorized under the ballot initiative, AS 11.71.010 does not criminalize the activities of registered marijuana businesses that are compliant with the initiative-enacted statutes.

A defendant violates AS 11.71.010(a)(3) if they commit a violation of AS 11.71 on five or more occasions, and one of these violations is punishable as a felony.[43] Of the crimes under AS 11.71, second-degree misconduct involving a controlled substance does not proscribe any misconduct involving marijuana,[44] and fifth- and sixth-degree misconduct involving a controlled substance are misdemeanors.[45] Thus, a registered marijuana business cannot violate AS 11.71.010(a)(3) unless it commits third-degree or fourth-degree misconduct involving a controlled substance. And while the crimes of third- and fourth-degree misconduct involving a controlled substance both include certain marijuana-related

---

[42]  AS 17.30.020.

[43]  AS 11.71.010(a)(3), (b)(2)(B).

[44]  *See* AS 11.71.021.

[45]  AS 11.71.050 and AS 11.71.060, respectively. Both of these offenses also have a stated exception for conduct authorized by AS 17.38.

conduct, the activities of businesses that are registered under AS 17.38.200 and comply with AS 17.38 are exempted from criminal liability.[46]

We accordingly conclude that the marijuana-related conduct of a business that is complying with AS 17.38 is not punishable as a felony under AS 11.71, and, as a result, a person operating such a business would not be guilty of violating AS 11.71.010. Thus, nothing about AS 18.38 creates an absurd result with respect to AS 11.71.010.

*Why we reject Burns's remaining challenges to his conviction*

Burns raises two additional challenges to his conviction. First, he notes that a criminal statute is void if it is so vague that people of ordinary intelligence must guess at its meaning, and he asserts that, after the enactment of AS 17.38, AS 11.71.010(a)(3) is impermissibly vague.[47]

In determining if a statute is vague, courts "consider whether there is a history or a strong likelihood of arbitrary enforcement and uneven application" and then ask "whether the statute provides adequate notice of [the] prohibited conduct."[48] As we explained above, we have reviewed both AS 17.38 and AS 11.71, and we conclude that these statutory schemes may be read harmoniously. The newer scheme, AS 17.38, legalizes certain conduct that formerly was prohibited by AS 11.71, and there is nothing confusing about what conduct is now permitted. We accordingly reject Burns's vagueness claim.

---

[46] *See* AS 17.38.070(a)-(e) (declaring that specific acts are permitted "[n]otwithstanding any other provision of law").

[47] *See Alleva v. State*, 479 P.3d 405, 408 (Alaska App. 2020).

[48] *Dep't of Revenue v. Nabors Int'l Fin., Inc.*, 514 P.3d 893, 899 (Alaska 2022) (alterations in original omitted) (quoting *Halliburton Energy Servs. v. State, Dep't of Lab., Div. of Lab. Standards & Safety, Occupational Safety & Health Section*, 2 P.3d 41, 50 (Alaska 2000)).

Lastly, Burns undertakes an evaluation of marijuana under the Controlled Substances Advisory Committee's criteria for adding, deleting, or rescheduling a substance.[49] Based on this evaluation, Burns argues that marijuana should not be a controlled substance.

But the process for changing the controlled substances list is reserved for the legislative and executive branches of government, not for individual citizens or this Court. Under Alaska law, proposals for changes to controlled substances lists are made by the Controlled Substances Advisory Committee, which considers certain statutory factors[50] and then makes recommendations to the governor.[51] After this, the governor introduces legislation in accordance with the committee's recommendation,[52] and the legislature may enact changes consistent with the governor's proposal. Because changing the controlled substances list is not a function of the judicial branch or of individual citizens, we reject Burns's claim.

*Why we conclude that the superior court had authority to impose the sentence and that the sentence was not clearly mistaken*

Burns was convicted of, *inter alia*, first-degree misconduct involving a controlled substance, an unclassified felony.[53] The sentencing range for this offense was 5 to 99 years, with a mandatory minimum sentence of 5 years to serve.[54] The superior

---

[49]   *See* AS 11.71.120.

[50]   AS 11.71.120(a), (c).

[51]   AS 11.71.110(1).

[52]   AS 11.71.120(a).

[53]   AS 11.71.010(c).

[54]   AS 12.55.125(b); *see Krack v. State*, 973 P.2d 100, 104 (Alaska App. 1999) ("Presumptive sentencing does not apply to first-degree misconduct involving a controlled

court could not refer Burns's case to the three-judge sentencing panel because his case was statutorily ineligible for referral.[55] Thus, as the superior court indicated during the sentencing hearing, 5 years was the minimum sentence it could impose.

Burns claims that because the statute underlying his conviction was impliedly repealed, he did not commit a crime, and therefore, the superior court did not have the authority or jurisdiction to impose his sentence. But as we have already explained, the statute underlying Burns's conviction was not impliedly repealed, and the superior court has general jurisdiction to hear all criminal matters.[56] Burns was charged with criminal conduct, so the superior court had jurisdiction to hear his case and sentence him.[57]

Burns also contends that the court should have imposed a lower sentence because lower penalties were available if he had been convicted of a less serious crime.[58] For example, Burns claims that he could have been convicted of fourth-degree misconduct involving a controlled substance, a class C felony,[59] or convicted for

---

substance which is an unclassified felony with a minimum 5-year sentence and a maximum 99-year sentence.").

[55] A person who is sentenced for first-degree misconduct involving a controlled substance is sentenced under AS 12.55.125(b). And under AS 12.55.165(a), a defendant is eligible for referral to the three-judge sentencing panel only if they are sentenced under AS 12.55.125(c), (d), (e), or (i).

[56] AS 22.10.020(a).

[57] AS 12.55.015.

[58] Burns asserts that under the rule of lenity, the superior court should have imposed a more lenient sentence. But the rule of lenity or strict construction comes into play "only when, after employing normal methods of statutory construction, the legislature's intent cannot be ascertained or remains ambiguous." *De Nardo v. State*, 819 P.2d 903, 907 (Alaska App. 1991). As we have explained, the statutes at issue in this case are not ambiguous. Thus, the rule of lenity does not apply.

[59] AS 11.71.040(d).

violating an individual community's prohibition of the sale and manufacture of marijuana, a class A misdemeanor.[60] Burns also asserts that the court was authorized to impose civil penalties for failure to comply with marijuana regulations.[61] Burns contends that he should have been sentenced in accordance with the more lenient sentencing laws applicable to these offenses.

But the prosecutor, not the superior court, makes charging decisions,[62] and the legislature, not the court, determines the sentencing range that may be imposed once a defendant is convicted of an offense.[63] Here, the State chose to charge Burns with an unclassified felony under AS 11.71.010. He was duly convicted of that offense, and the court was required to sentence him as prescribed by the legislature.[64] The superior court sentenced Burns to the minimum term of imprisonment within the statutory range, and we conclude that this sentence was not clearly mistaken.[65]

For these reasons, we reject Burns's challenge to the sentence imposed by the superior court.

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

[60]  AS 17.38.330(d).

[61]  *See* AS 17.38.190(a)(9).

[62]  *See State v. Dist. Court*, 53 P.3d 629, 633-34 (Alaska App. 2002).

[63]  *See Anderson v. State*, 904 P.2d 433, 436 (Alaska App. 1995).

[64]  *See Nell v. State*, 642 P.2d 1361, 1368 (Alaska App. 1982).

[65]  *See McClain v. State*, 519 P.2d 811, 814 (Alaska 1974) (explaining that appellate courts employ the "clearly mistaken" standard when reviewing sentencing decisions).